## Case No. 6,362.

### In re HENKEL.

[2 Sawy. 305.] [1]

District Court, D. California. Dec., 1872.

BANKRUPTCY—HOMESTEAD EXEMPTION.

1. Under the laws of the state of California, the exemption of the homestead from forced sale remains, notwithstanding that an insolvent has devoted moneys which equitably belonged to all his creditors, to the payment of a debt which was a lien on the homestead.

[Cited in Re McKenna, 9 Fed. 36.]
[Cited in Crawford v. Richeson, 101 Ill. 357.]

2. A person even adjudged to be indebted may, at any time before the lien of the judgment has attached, declare a homestead.

3. A general creditor of an insolvent cannot subject a homestead to liability for his debts, notwithstanding that the insolvent had applied property in his hands to the payment of a debt which was a lien on the homestead.

[In bankruptcy. In the matter of William Henkel. Heard on exceptions to the finding of the register. Case No. 6,361.]

Gray & Casey, for petitioners.
L. S. Clark, for creditors.

HOFFMAN, District Judge. The assignee having determined in this case that certain real estate claimed as a homestead, passed to him, under the assignment as part of the assets of the bankrupt, and that as such it should be sold, and its proceeds distributed among the creditors, exceptions were taken to his determination, and the question referred to the court for final decision, under the fourteenth section of the bankrupt act [of 1867 (14 Stat. 522)].

The facts are admitted. They are as follows: In November, 1866, the bankrupt purchased the property claimed as a homestead, for the sum of $3,000. This sum he obtained by borrowing $2,000 on a mortgage of the property, and $1,000 on his note. On the sixth of December he sold his entire personal estate for $3,000, and with the proceeds paid the mortgage and the note. On the twelfth of January he declared the real estate to be a homestead in accordance with the laws of this state. At the time he made this declaration, he was indebted in the sum of $2,056. From this indebedness he now seeks to be discharged. The assignee and register were of opinion that this declaration is to be deemed "a conveyance of property by the bankrupt in fraud of his creditors," and that the property so conveyed passed to the assignee, and is assets in his hands.

---

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

The provision of the bankrupt law, under which the exemption is claimed, is as follows: "Provided, further, that if there shall be excepted from the operation of the provisions of this section, * * * and such other property not included in the foregoing exception, as is exempted from levy and sale upon execution or other process or order of any court, by the laws of the state in which the bankrupt has his domicil at the time of the commencement of proceedings in bankruptcy, to an amount not exceeding that allowed by such state exemption laws in force in the year 1864."

By the laws of California, the homestead, consisting of a quantity of land, together with the dwelling house thereon, and its appurtenances, not exceeding in value the sum of $5,000, to be selected by the husband and wife, or either of them, or other head of a family, is declared not to be subject to forced sale on execution, or any final process from any court, for any debt or liability contracted or incurred after the passage of the act. Hitt. Dig. § 3541. This legislation is in obedience to section 15, art. 11, Const. Cal., which requires the legislature "to protect by law from forced sale, a certain portion of the homestead and other property of all heads of families." The fourteenth section of the bankrupt act provides, "that all property conveyed by the bankrupt in fraud of his creditors, shall, in virtue of the adjudication in bankruptcy, and the appointment of the assignee, be at once vested in such assignee." But it is evident that this provision was not intended to limit or impair the effect of the previous provisions, by which all property exempted from forced sale by the law of the state was exempted from the operation of the assignment. The language of the first clause is clear, emphatic and comprehensive; it admits of no exception. "In no case shall the property hereby excepted pass to the assignee, or the title of the bankrupt thereto be impaired or affected by any of the provisions of this act." The bankrupt act, like all other statutes, must, if possible, be so construed as to make its provisions consistent and harmonious; but if the subsequent clause, respecting property conveyed in fraud of creditors, is construed as suggested, the provisions of the act become conflicting and inconsistent.

Such a construction, unless imperatively required by the language, must be erroneous; but it is clearly inadmissible when it can be adopted only by wresting the language from its natural sense, and attaching to it a meaning which can with difficulty be attributed to it. The declaration of a homestead is in no sense "a conveyance." He who declares land which he already owns to be a homestead does not "convey" it; he merely avails himself of a legal right to place it in a condition where it will not be liable to forced sale. The right of property remains unchanged, except that the law, mindful of the object for which homesteads are allowed to be declared, provides that after the declaration the homestead cannot be alienated, except with the concurrence of the wife, and that on the death of the husband it survives to her for the benefit of herself and the family. It is evident that to call the declaration of a homestead a "conveyance of the property" would be doing extreme violence to the language; and in view of the previous provisions of the same section, such a construction is wholly inadmissible. If, then, by the laws of this state, the homestead declared by the bankrupt in this case was exempted from forced sale on execution, it did not pass to the assignee, and "the title of the bankrupt thereto was in no way affected or impaired by any of the provisions of the act." The question thus arises: was it exempted? In Riddell v. Shirley, 5 Cal. 488, it was held, where an insolvent sold his property in order to raise funds to discharge debts which were liens on his homestead, that the sale was fraudulent and void as against creditors, and that the property might be attached in the hands of a vendee who had bought with full knowledge of the circumstances. In this case no claim against the homestead was asserted, nor does the court intimate that it could be made liable to the general creditors, even to the extent of the liens on it which were discharged with the proceeds of the fraudulent sale. In Randall v. Buffington, 10 Cal. 493, it was held that a general creditor of an insolvent cannot subject a homestead to liability for his debts, notwithstanding that the insolvent had applied the property in his hands to payment of a debt which was a lien on the homestead. I cannot discover that the authority of this case has since been shaken. It must, therefore, be regarded as deciding that under the laws of California the exemption of the homestead from forced sale remains, notwithstanding that an insolvent has devoted moneys, which equitably belonged to all his creditors, to the payment of a debt which was a lien on the homestead.

The case under consideration is much stronger, for the bankrupt, when he paid off the incumbrances on his real estate, was not in insolvent circumstances, and the real estate remained for a month, and until it was declared a homestead, liable for his debts, and more than sufficient to satisfy them. That a person even adjudged to be indebted may, at any time before the lien of the judgment has attached, declare a homestead, was held in Culver v. Rogers, 28 Cal. 526. In that case, a decree of foreclosure on a mortgage, and a judgment for the unsatisfied balance had been obtained. The court held that the judgment did not become a lien on his other real estate until after the sale of the mortgaged premises, the ascertainment of the unsatisfied balance, and the docketing of the judgment for the sum so ascertained, and that a declaration of homestead made

before the sale of the mortgaged premises, exempted the homestead from sale, under the judgment subsequently docketed.

From these authorities it results: (1) That under the laws of California, an insolvent may apply funds in his possession to the discharge of incumbrances on his homestead, without impairing its inviolability as such; and (2) that a homestead may be declared at any time before the lien of a judgment has actually attached to the land.

Whether or not the object intended to be attained by the homestead laws is of sufficient importance to compensate for the ill effects of the frauds which may be committed under them, is a question for the legislature and not the courts to decide. If the views of the register be adopted, every declaration of a homestead must be held void as against all existing creditors at the time of the declaration. That such is not the construction given to the law by the highest tribunal of the state, we have seen from the cases above cited. That such was not the intention of the legislature may also be inferred from other laws on the same subject. By the act of March 13, 1860 [St. Cal. 1860, p. 87], the privileges of the homestead laws are extended to unmarried persons, but with important modifications. The homestead is not to exceed the value of $1,000, and by section 9 it is declared to be "not exempted from forced sale to satisfy any debt or liability created or assumed by the applicant prior to the filing of the said homestead title for record." By the general homestead law, the only liabilities to which the homestead is subjected, are for mechanics', laborers' or vendors' liens, and for mortgages or other liens given to secure the purchase money. The legislature has thus clearly discriminated between the two classes of persons who may declare homesteads. In the hands of heads of families who are the more favored, it is exempt from liability for all debts except those to mechanics or laborers upon it, or to those who have furnished the funds for its acquisition. In the hands of the less favored class, it is exempt from liability for those debts only which are incurred subsequently to its creation. We have no authority to interpolate into the general homestead law the limitations and liabilities which the legislature have imposed only in the case of homesteads declared by unmarried persons.

In the opinion rendered by the register, it is suggested that the words "to be selected," in the homestead law, "imply a prohibition to the creation of a homestead by any person when the creation thereof will make him insolvent; or, in other words, that the statute does not permit the creation of a homestead when it is the only property or the representative of it, upon the possession of which the credit was obtained." The effect of this construction would be to render the declaration of a homestead invalid in all cases where the person declaring it did not possess property independently of the homestead sufficient to pay his debts. I am unable to see how so important consequences can be derived from the words referred to.

The homestead is to be selected, that is, set apart and designated as such; for a new character is impressed on the property, not only in respect to its exemption from forced sale, but also as to its inalienability without the consent of the wife, and as to her right of survivorship. But the statute does not declare that to make this selection valid, the remaining property shall be sufficient to pay all the debts of the party selecting the homestead. I can see no warrant for interpolating such a provision. Nor would the practical effect of the construction suggested be reasonable or just. The most that even the register would desire would be to make the homestead liable for all the debts existing at the time of its creation. But if the fact that the remaining property of the party selecting a homestead is insufficient to pay his debts, renders the declaration invalid, the homestead will be exposed to public sale at the suit of any creditor, or will pass to the assignee in bankruptcy, to be distributed amongst all the creditors, including those whose debts were contracted subsequent to its creation, and who have no equitable or moral right to look to it for payment.

That the legislature has intentionally omitted from the general homestead law the provisions which, in the special act of 1860, render the homestead liable for any debt existing at the time of its creation, has already been shown, and the decisions above cited clearly establish that a person indebted, or even insolvent, may apply his property to the acquisition of, or the discharge of encumbrances upon, a homestead, without depriving it of the exemption from forced sale.

It is further suggested by the register that, if the homestead law be construed to exempt the homestead from forced sale, for debts existing when it was created, it impairs the obligation of contracts, and it is therefore unconstitutional. To this it is sufficient answer to say, that the debts were contracted subsequent to the passage of the homestead act. No law has, since the creation of the debt, been passed, by which the creditor's remedy is in any way affected. When he gave credit he knew, or is presumed to have known, what rights and privileges the debtor is allowed by law, and to what property he must look for a satisfaction of his debt.

I conclude, therefore, that, under the laws of this state, the homestead of the bankrupt in the case at bar was exempted from forced sale, and that, therefore, no title to it passed under the bankrupt law to the assignee. The clerk will certify this decision to the assignee.