## Case No. 1,652.

### In re BOOTHROYD et al.

[14 N. B. R. 223.] [1]

District Court, E. D. Michigan. May Term, 1876. [2]

BANKRUPTCY—PARTNERSHIP—EXEMPTION.

1. The individual members of a firm are not entitled to exemption from the partnership stock.

[Cited in Re Hughes, Case No. 6,842; Re Corbett, Id. 3,220.]

2. When a partner took notes belonging to the firm and with these purchased a homestead, three days before the bankruptcy of the firm, and with knowledge of its insolvent condition, held, that he was not entitled to retain the homestead as exempt.

[Cited in Re Sauthoff, Case No. 12,380; Re Parker, Id. 10,724; Re Melvin, Id. 9,406.]

[See note at end of case.]

In bankruptcy. The question in this case arises upon the bankrupts' claims to exemptions under the statute. These claims, as set forth in their schedules, are by said bankrupts [William H. Boothroyd and Frederick G. Gibbs] jointly in Schedule B, 5, as property claimed to be exempt by state laws: 1st. Materials and stock, etc., proper to enable the petitioners to carry on their profession, trade, occupation and business of stationers and booksellers, to be excepted from their stock and fixtures in their store on Woodward avenue, Detroit, five hundred dollars. 2d. By said bankrupt Boothroyd, on such Schedule D, 5, "none." 3d. By said bankrupt Gibbs, of Schedule F, 5, as property claimed under the bankrupt act, "lot 16, in Bagg's subdivision of Park lot 65, according to plat on file in recorder's office, Wayne county, being south side of Parsons street, incumbered as stated in Schedule F, 1, being that of the individual property of said Gibbs," and then stated to be "mortgaged five hundred dollars. Hold contract for warranty deed when mortgage settled; es-

timated value two thousand two hundred dollars;" and, as property claimed to be exempt by state law, "Books, prints and pictures referred to in Schedule F, 2, one hundred dollars."

The assignee reported, under General Order 19, that he was unable from the schedules of said bankrupts to find or select any property to which said bankrupts, or either of them, have any claim as exempt, either under the laws of the United States or the laws of the state of Michigan. To this report the bankrupts excepted. 1st. Because the assignee aforesaid has not given to said bankrupts the exemption of stock in trade, materials, etc., claimed in Schedule B, 5, attached to their petition in bankruptcy. 2d. Because the said assignee has not in his said report allowed to Frederick G. Gibbs, aforesaid, the homestead and the books and pictures claimed as exempt in Schedule F, 5, attached to his petition filed in said cause with the petition of said firm of Boothroyd & Gibbs.

On the hearing of the exceptions before the register the parties stipulated to admit as facts: 1st. That all the right, if any, to any homestead, was obtained by F. G. Gibbs from a transfer of notes to the amount of two thousand two hundred and fifty dollars to William Perkins, Jr., and that said Gibbs has contracted simply. 2d. That said notes were notes belonging to the firm of Boothroyd & Gibbs, said bankrupts, known as the McCormick notes, and received by them from the sale of their Bay City store about April 1, 1875. 3d. That said notes were applied as above by said Gibbs on the 17th day of April, 1875, three days before the firm of Boothroyd & Gibbs filed their petition in bankruptcy. 4th. That at the time of such application, said Gibbs, who was a member of the said firm, knew that they (the firm) contemplated filing said petition, and that said firm could not then pay its debts in full.

Opinion of the Register:

First. As to the claim to five hundred dollars in value of materials, stock, etc., to enable the bankrupts to carry on their business. This claim is made under the state law, which enacts (Comp. Laws 1871, § 6101): "The following property shall be exempt from levy and sale under any execution, or upon any other final process of a court * * * The tools, implements, materials, stock, apparatus, team, vehicle, horses, harness or other things, to enable any person to carry on the profession, trade, occupation, or business in which he is wholly or principally engaged, not exceeding in value two hundred and fifty dollars." The bankrupts claim not only that they are a "person" within the meaning of this section, so that they become entitled to the advantage to be derived from its provisions—an advantage which seems by the statute to be limited to two hundred and fifty dollars in amount—but they seek to enlarge

their privilege by claiming as many sums of two hundred and fifty dollars as there are individuals in the firm in which the ownership of the property was vested. The principle of interpretation which requires a statute to be construed so as to effectuate its purpose gives some plausibility to this claim of two hundred and fifty dollars to each bankrupt, for here the statute expressly declares the object of this exemption to be to enable the person "to carry on the business in which he is wholly or principally engaged." The partnership having been dissolved by the bankruptcy, it is as individuals only that they can be considered as within the purposes of the act. As an artificial person—a description which applies to partnerships as well as corporations—a claim for two hundred and fifty dollars would be met by the objection that such "person" had ceased to exist. This objection is avoided in this case by the claim of two hundred and fifty dollars for each member of the firm; and if the statute intended this, then the gross amount of the exemption can be indefinitely extended at the will of the partnership. It may be inquired, moreover, if this be the right of each individual, ought not the claim to have been so asserted in this case in the schedules? Neither Boothroyd nor Gibbs set up any such claim in their individual schedules; probably because it was seen that the property out of which the exemption was claimed was not the property of either Boothroyd or Gibbs, but of the artificial "person" of Boothroyd & Gibbs, a totally distinct ownership, and so set forth in the schedules; and the practical question, therefore, is whether, under the form of a designation of exempt property, the powers of this court can be employed to take the property of Boothroyd & Gibbs in value to the amount of five hundred dollars, and disregarding the rights of these partners, inter sese, or rather assuming without proof that they are equal in respect to their ownership, or interests in the specified amount of stock, etc., grant two hundred and fifty dollars of it in value to Boothroyd and two hundred and fifty dollars of it to Gibbs, which must be the effect of the action of the court if the exceptions be sustained, except upon the theory that the partnership of the bankrupts for this purpose still continues, which probably will not be claimed. The court is asked in fact to change a title to property; and the question is whether section 5054 of the Revised Statutes confers upon this court any such power. In seeking an answer to this question it seems pertinent to observe that exemption laws, that is, laws to prevent the forced sale of property on execution, never confer a right of property. Their sole function is to leave the property, which might otherwise be subject to a forced sale, untouched, with every right of ownership intact. Section 5054, the section which declares the effect of the instrument by which the property of the bankrupt passes to the

assignee, declares that there shall be excepted from the operation of the provisions of this section * * * such * * * property * * * as is exempted from levy and sale upon execution or other process, or order of any court by the laws of any state in which the bankrupt has his domicile, etc., and provides "that the foregoing exception shall operate as a limitation upon the conveyance of the property of the bankrupt to the assignees; and in no case shall the property hereby excepted pass to the assignee or the title of the bankrupt thereto be impaired or affected by the provisions of this act." It seems to me that it was the intention of the act of congress to leave the excepted property in exactly the same condition, as to ownership, that it would be if the bankrupt act had not been passed, or as it would be if the person whose rights and interests are in question had never become in any way subject to the provisions of the act. The duties of the assignee are simply to ascertain, to designate excepted property and let it alone. It is not possible for him to confer any new right, or to create a property interest which did not before exist. I am therefore of opinion that he was right in refusing to designate any of the partnership property to the individual use of the bankrupts, and that this exception should be overruled.

Second. As to the claim of the bankrupt Gibbs to the exemption of a homestead. The property claimed is described in the individual schedule of the bankrupt as of the estimated value of two thousand two hundred dollars, subject to a mortgage of five hundred dollars, for which the bankrupt "holds contract for warranty deed when the mortgage is settled;" and the stipulation of facts admits that all the right to the property was obtained by Gibbs by a transfer of promissory notes amounting to two thousand two hundred and fifty dollars, which were received by the firm of Boothroyd & Gibbs, about April 1, 1875, for the sale of their store in Bay City; that the notes were thus appropriated by Gibbs on the 17th day of April, three days before the filing of the petition in this case, and, at that time, Gibbs knew that the firm could not pay their debts in full, and contemplated filing a petition to be adjudged bankrupts. That an appropriation of the partnership property of an insolvent firm by one of its members to his individual use would in equity be held void as against creditors, I suppose may be confidently assumed; that the creditors in a proper case would be entitled to pursue such property and recover it from any party having knowledge of the facts; and that no change in the form of the property would prevent the creditors from insisting that, whatever interest remained in the partner who thus appropriated the firm property, equity would decree as held in trust for the creditors of the firm, may also be assumed. The equitable title to these notes, then, if in the hands of a

party with notice, was, at the date of the bankruptcy, in the firm of Boothroyd & Gibbs. If Perkins, the transferee, took them without notice, or if for any reason he may hold them as a valid payment on his contract with Gibbs, the property for which the notes have been exchanged is none the less the property of the firm of Boothroyd & Gibbs; and the question is, whether one partner can be assigned a homestead out of the partnership estate; for I presume it will not be doubted that the same circumstances which would render a transfer of partnership property to a third person void, would render void a transfer of partnership property by the firm to one of its members. It is true, that the facts conceded for the purpose of the hearing do not show any consent by Boothroyd to the appropriation of the McCormick notes by his partner; but, even if such consent were shown, it would not, in my judgment, in view of the insolvent condition of the firm, and the bankruptcy then contemplated, make the transfer of the notes so far valid as that they or the proceeds of them should become the individual property of Gibbs; and in the absence of this effect, no homestead claim can be maintained by Gibbs under the statutes of Michigan. The homestead laws of Michigan require ownership in and occupancy of the property claimed to justify its exemption. This ownership may be in the fee of the land on which the dwelling occupied is situated, or it may be derived under a contract for the purchase of it. But that ownership and occupancy must concur in the claimant has been uniformly held by the supreme court of Michigan for more than twenty years. See Wisner v. Farnham, 2 Mich. 472; Beecher v. Baldy, 7 Mich. 488; McKee v. Wilcox, 11 Mich. 358; Dyson v. Sheley, Id. 527; and Coolidge v. Wells, 20 Mich. 79. It seems unnecessary to cite the provisions of the bankrupt act to show that the appropriation by Gibbs of the McCormick notes was fraudulent, within the meaning of that act. Assuming that the transaction was known to and approved by Boothroyd, then it is apparent that it was a transfer in contemplation of the bankruptcy (by Boothroyd & Gibbs) to Gibbs, who, of course, knew that it was made in contemplation of bankruptcy, with a view to prevent the property from coming to the assignee in bankruptcy, and, therefore, void, under the provisions of section 5129 of the Revised Statutes; and certainly this court will not hold that partners as between themselves may make valid transfers of their property under circumstances which would render such transfers void as between them and third persons. And if Boothroyd did not consent to the transaction, that circumstance surely will not commend it, either upon moral or legal grounds, to the favorable consideration of the court. I am therefore of opinion that the assignee was right in refusing to designate the property as an exemption to which the bankrupt Gibbs is entitled.

Third. As to the "books and pictures" claimed as exempt. The statute under which this claim is asserted (Comp. Laws Mich. 1871, § 6101) specifically exempts "the library and school-books of every individual and family, not exceeding one hundred and fifty dollars, and all family pictures." If the value of the property claimed in this item be correctly stated, the books, I think, are clearly exempt; for the books and pictures together do not amount in value to the sum specifically exempted. If the pictures had been set forth as "family" pictures, they also would be exempted, irrespective of their value; but if not "family" pictures, it is still within the power of the assignee, under the general authority given to him, to designate them as exempt; and the neglect to do so I am more inclined to regard as an inadvertence on his part than as a deliberate purpose. At any rate, I think that they should be designated as exempt, and therefore that to this extent the exceptions of the bankrupt Gibbs to the report of the assignee should be sustained.

Hovey K. Clarke, Register in Bankruptcy.

Atkinson & Atkinson, for bankrupts.
F. G. Russell, assignee, in pro. per.

BROWN, District Judge. The question whether a member of a partnership, dissolved by bankruptcy, may have an exemption from the stock in trade of the firm, has been discussed in many states and in several of the district courts, under the bankrupt law, and the opinions seem to be in direct conflict. The technical argument of the register in this case, that the firm is dissolved by the bankruptcy, and that it is not a "person" within the meaning of the exemption laws, because it has ceased as an entity, and that no member of the firm is entitled to an exemption, because he has no individual property from which an exemption can be claimed, is a very strong one, and I am not sure that it is not unanswerable. At the same time, in several cases the courts have gone so far in applying the maxim that exemption laws should be liberally construed, as to hold that the individual members of a firm are entitled to exemption from the property of the firm. Were this a new question, I should give the subject a much more labored research and careful consideration than I deem necessary at present. But I consider the law in this district as put to rest by the decision of my learned predecessor in Re Blodgett [Case No. 1,555], where the very question at issue here was decided adversely to the exemption. Nearly all the cases decided up to that time are cited in the opinion, and the learned judge evidently bestowed upon the matter his usual careful consideration. A different

view has lately been taken by Judge Treat, of Missouri, in Re Richardson [Id. 11,776]; but as this was a mere reiteration of the rule laid down in the Case of Young [Id. 18,148], previously decided by him, I think it adds nothing to the weight of authority against the position taken by Judge Longyear. My intention is to follow the prior decisions of this court, unless I am well satisfied in my own mind they are wrong, or until reversed by a higher court. In this case I have no hesitation in following the opinion in Re Blodgett, and in affirming the action of the register. I am further confirmed in this view of the law by the recent opinion of Judge Dillon in the case of Handlin v. Venney [Id. 6,018], by Judge Welker in Re Tonne [Id. 14,095], and by Judge Erskine in Re Stewart [Id. 13,420], where the precise question was passed upon.

In relation to the homestead, it was conceded that all his right to it was obtained by Gibbs from a transfer of notes, to the amount of two thousand two hundred and fifty dollars, to William Perkins; that these notes belonged to the firm, were known as the McCormick notes, and received by them from the sale of their Bay City store, about April 1st, 1875; that the notes were applied in purchase of a homestead by Gibbs, on the 17th of April, 1875, three days before the firm of Boothroyd & Gibbs filed their petition in bankruptcy; and that at the time of such application, Gibbs was a member of the firm, and knew that the firm contemplated filing such petition, and that it could not pay its debts in full. I fully concur in the opinion of the register upon this point, that the transfer of the McCormick notes was not less a fraud upon the act because they were transferred to one partner instead of to a third person, the intent being to prevent their coming into the hands of creditors. Indeed, if the facts of this case called for it, I think I should be prepared to go much further, and to hold that a debtor, knowing himself to be insolvent, has no right, upon the eve of bankruptcy, to take his property and invest it in a homestead. Such was apparently the view taken by the courts in the case of Brackett v. Watkins, 21 Wend. 68, and Grimes v. Bryne, 2 Minn. 89 [Gil. 72], and in the Matter of George C. Wright [Case No. 18,067]. I am aware that it was held by the supreme court of this state, in the case of O'Donnell v. Segar, 25 Mich. 367, that the disposing of property subject to execution, for the purpose of investing the proceeds in or converting them into exempt property, would not deprive the party of an exemption, so long as his property is really such as the statute requires, and that such conversion would not constitute a legal fraud. Similar views were apparently entertained by the court in the Case of Henkel [Cases Nos. 6,361 and 6,362], in construing the statute of California,

following and approving the case of Randall v. Buffington, 10 Cal. 491. A similar rule apparently obtains in the state of Texas.

Whether the supreme court will apply the same principle of law to the case of a homestead which was applied to the exemption of personal property, in O'Donnell v. Segar, I doubt. But I cannot believe it possible for a court to hold that the conversion of a stock in trade of a firm into a homestead, upon the eve of bankruptcy, with full knowledge of its insolvent condition, would not be a legal fraud of which the court could take notice. It is by no means necessary to say, as was argued by the court in Re Henkel [Case No. 6,362], that every purchase of a homestead must be held void as against all existing creditors at the time of the purchase. This does not follow as an inference from the position assumed. All I intend to say is this: that the purchase by an insolvent trader of a homestead, upon the eve of bankruptcy, with knowledge of his insolvent condition, and for the purpose of placing the property beyond the reach of process, is a legal fraud which no court should hesitate to hold void as to creditors. The magnitude of such a fraud would be more apparent in states where the law exempts a farm or lot of land wholly irrespective of its value, and where a party might, on the eve of bankruptcy, invest a large fortune in a homestead; but the principle is the same everywhere. As the register decided in favor of the exemption of books and pictures, and no question is made as to the correctness of his ruling upon this point, his report must be confirmed.

[NOTE. On appeal to the circuit court this decree was affirmed (case not reported). Subsequently Gibbs gave a mortgage on this homestead to his attorneys for $250 for services rendered in contesting his claim. The assignee petitioned for an order demanding the surrender of the premises and the release of the mortgage, whereupon the court entered a decree for the petitioner. See In re Boothroyd, Case No. 1,653, following.]