FANNY JACOBY *vs.* PARKLAND DISTILLING COMPANY and others.

July 15, 1889.

Fraud on Creditors—Homestead—Conversion of Non-Exempt into Exempt Property.—An insolvent debtor, in securing a homestead for himself and family by moving into and occupying as his dwelling a building which he owns, for the express purpose of holding it as exempt, takes nothing from his creditors in which they have any vested right, and hence commits no legal fraud.   In thus putting his property into a shape in which it will be the subject of a beneficial provision for himself and family, he merely exercises a right which the law gives him.

**Same—Property Statement to Creditors—Estoppel.**—The fact that in a financial statement, upon the faith of which he was given credit, he included the property as part of his assets, will not estop him, as against such creditors, from subsequently appropriating it as a homestead, and claiming its exemption.

**Same—Uses not Restricted.**—The statute imposes no restrictions upon the uses of a homestead, provided only it is the dwelling of the claimant; following *Kelly* v. *Baker*, 10 Minn. 124, (154.)

Plaintiff, alleging herself to be the owner of the undivided one-half of lot 7, block 108, in Minneapolis, according to the original plat, occupied by herself and tenants, brought this action in the district court for Hennepin county, to determine the adverse claims of the defendants to interests in and liens on the property. The answering defendants asserted liens on the premises as judgment creditors of George G. Jacoby, plaintiff's husband. The action was tried by *Young*, J., who found that from a date long prior to January 1, 1887, until August 8, 1888, George G. Jacoby owned in fee (his title being of record) the undivided one-half of the lot described in the complaint, and the buildings thereon, the lot being 66 by 165 feet, and containing a quarter-acre of land. During all this time there was upon the lot a brick-veneered building, covering the whole front of the lot, and 60 feet deep and three stories high. The first story consisted of three stores used for business purposes, and the others were divided off into rooms, one suite of which, on the second floor, plaintiff and her husband, ever since December 1, 1887, have occupied with their household as their residence and homestead, and they have had no other residence or homestead during that period. The other rooms are occupied as places of residence by other persons, tenants of the owners. On August 8, 1888, George G. Jacoby (plaintiff joining) conveyed the undivided half of the lot in fee to one Lehmaier, who on the same day conveyed in fee to plaintiff. The lot and building are worth $24,000, and are subject to a mortgage of $10,000 made in 1883, so that plaintiff's interest in the premises is of the value of $7,000. The judgments of the answering defendants were docketed in March and April, 1888, and the debts of George G. Jacoby for which the judgments were recovered were contracted prior

to the time plaintiff or her husband began to reside on the premises. Judgment was ordered and entered for plaintiff, and the defendants appealed.

At the trial the defendants offered to prove that the building is on one of the principal business streets of the city and has the appearance of a business block, and is surrounded by business blocks. That late in 1886 and also in 1887, and before sales of goods by the defendants to Jacoby on which the judgments were founded, he made a statement to defendants, under his own hand, in which he stated that his assets consisted in part of an undivided one-half interest in the business building and property involved in this action, and that they made the sales in reliance on such statement. That in January, 1888, he made an assignment in insolvency with liabilities of $24,000, and but $2,000 assets. They also offered other evidence tending to prove that Jacoby made the purchases and took up his residence in the building in contemplation of insolvency, and with intent to defraud his creditors. On plaintiff's objection the evidence offered was excluded, and the defendants excepted.

*F. G. Ingersoll* and *Marshall A. Spooner*, for appellants.

*Thomas Canty* for respondent.

MITCHELL, J. The evidence offered by the defendants, the exclusion of which is here assigned as error, may all be classified under two heads: *First*, evidence tending to prove that George G. Jacoby, an insolvent debtor, in contemplation of insolvency, moved into and made his dwelling in the property in controversy, which constituted a large part of his assets, for the express purpose of holding it as a homestead and thereby withdrawing it from the reach of his creditors; and, *second*, that in a financial statement made to defendants, and upon the faith of which they gave him credit for the claims upon which their judgments against him were recovered, he had included as part of his assets the property in question. It is claimed that the first would render the claim of homestead exemption fraudulent as to creditors, and that the second would estop Jacoby from claiming the exemption as against the defendants. There is nothing in either point. A debtor in securing a homestead for himself and family, by purchasing a house with non-exempt assets, or by moving into a

house which he already owns, takes nothing from his creditors which the law secures to them, or in which they have any vested right. He merely puts his property into a shape in which it will be the subject of a beneficial provision for himself, which the law recognizes and allows. Even if he disposes of his property subject to execution, for the very purpose of converting the proceeds into exempt property, this will not constitute legal fraud. This he may do at any time before the creditors acquire a lien upon the property. It is a right which the law gives him, subject to which every one gives him credit, and fraud can never be predicated on an act which the law permits. *Tucker* v. *Drake*, 11 Allen, 145; *O'Donnell* v. *Segar*, 25 Mich. 367; *North* v. *Shearn*, 15 Tex. 174; *Cipperly* v. *Rhodes*, 53 Ill. 346; *Culver* v. *Rogers*, 28 Cal. 520; *Randall* v. *Buffington*, 10 Cal. 491.

This also disposes of the question of estoppel. The fact offered to be proved did not contain the first element of estoppel, for, as the law permits a debtor at any time to select or appropriate out of his property, as exempt, the amount allowed by statute, or to convert non-exempt property into that which is exempt, every one must be presumed to deal with him with reference to the law. Any other view would imply a prohibition of a selection and occupancy of a homestead by any debtor, when doing so would make him insolvent, or where it is the only property upon the possession of which credit was obtained. The effect of this would be to render the selection and occupancy of a homestead invalid in all cases where the debtor did not own enough other property to pay all his debts in full. Such a construction would often render the homestead law nugatory and valueless in the very cases where its protection is most needed. *In re Henkel*, 2 Sawy. 305.

The fact that the building on the lot in question was in part suited to and used for business purposes was wholly immaterial. The law exempts as a homestead a quantity of land not exceeding one lot, and no restriction is placed upon the uses of any part of it, provided it is the dwelling of the debtor. This has been the settled construction of the statute for many years. *Kelly* v. *Baker*, 10 Minn. 124, (154;) *Umland* v. *Holcombe*, 26 Minn. 286, (3 N. W. Rep. 341.)

Neither can the questions of the value of the premises, or what proportion that value bears to the remaining property of the debtor, be at all important, so long as the premises are in area within the limit of exemption fixed by law.   Unfortunately our statute fixes no limit as to value upon a homestead exemption.   It must be confessed that such a law may be greatly abused, and permit great moral frauds; but this is a question for the legislature, and not for the courts.   There was no error in excluding the evidence offered, and the agreed facts fully justified the findings of the trial court.

Judgment affirmed.