HUENERGARDT v. JOHN S. BRITTAIN DRY GOODS CO. et al.

(Circuit Court of Appeals, Eighth Circuit. April 21, 1902.)

No. 1,642.

1. BANKRUPTCY — HOMESTEAD EXEMPTION — CHANGE DURING FOUR MONTHS' PERIOD.

The bankruptcy law does not affect the rights of an insolvent debtor, during the 4-months period prior to his bankruptcy, with respect to his exemptions, and under the laws of Kansas he may change his homestead during that time by abandoning one, and removing to and claiming another more valuable, where it is done in good faith, and without fraud.

Appeal from the District Court of the United States for the District of Kansas.

J. S. Dean (L. F. Keller and Eugene Hagan, on the brief), for appellant.

Frank L. Martin (George A. Vandeveer, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is an appeal in a bankruptcy proceeding. The facts out of which the controversy arises are these: On March 23, 1900, various creditors, including the appellees, filed an involuntary petition in bankruptcy against Adam Huenergardt, the appellant, in virtue of which he was adjudicated a bankrupt on April 20, 1900. The appellant was a tinner by trade, and followed that

calling. He also had a general store in the village of Durham, Marion county, Kan. At the time of his adjudication in bankruptcy, he owned a house and two lots in the town of Hillsboro, Marion county, Kan., and in making a statement of his financial condition to the John S. Brittain Dry Goods Company on January 17, 1900, he described this latter property as his homestead. He also owned a storebuilding in the town of Hillsboro, and also a building in which he transacted business in the village of Durham, Marion county, Kan. He also owned the N. W. ¼ of section 1, township 18, range 1 E., in Marion county, Kan., which was a farm. He purchased this farm in 1898, but in making the statement of his financial condition on January 17, 1900, he did not allude to the farm as forming a part of his assets, because the record title to the farm was at that time vested in one Bartel, who held the legal title thereto to indemnify him (Bartel) as surety upon a note in the sum of $900, which had been executed by the appellant as principal. Up to the 12th of March, 1900, he owed, on this note, about $500, which was then paid, and Bartel conveyed the property to him by a quitclaim deed. Some time in January, 1900, the appellant moved from the house in the town of Hillsboro, which he had described as his homestead, to the village of Durham, and lived, until a few days prior to March 12, 1900, in a rented house in that village, but two of his children, as it seems, continued to live in the Hillsboro house. Some time during the winter of 1900, the appellant leased the aforesaid farm, for the period of one year from and after March 1, 1900, to a tenant, and two or three days prior to March 13, 1900, he made an arrangement with this tenant to occupy three rooms of the house, which was situated on the farm, and moved into the same with his family and a part of his furniture, with the intention, as he testified, of making the farm his homestead. After moving to the farm with his family, he continued in business in the town of Durham, but went to his home on the farm at night, save on a few occasions when he spent the night at his former place of abode in the village. After the appellant was adjudicated a bankrupt, he claimed the farm, on which he had taken up his residence in the manner aforesaid, as his homestead, and demanded of the trustee that it should be set aside to him as exempt. The trustee denied this request, and on exception taken to such action, the matter came before the district court for adjudication, which approved the action of the trustee, after referring the matter to a referee to hear the testimony. Thereupon, the bankrupt prosecuted an appeal to this court. The question which arises upon the appeal is whether, at any time within four months preceding the institution of bankruptcy proceedings, the bankrupt had the right to abandon one homestead, which he occupied, and take up his abode on another piece of property, which he owned, and claim that as his homestead.

Section 6 of the bankrupt act declares, with respect to exemptions, that "this act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws, in force at the time of the filing of the petition, in the state wherein they have had their domicile for the six months, or the greater portion thereof, imme-

diately preceding the filing of the petition;" so that the right of the bankrupt to exemptions is to be determined mainly by the exemption laws of the state of Kansas and the decisions thereon, the bankrupt having his domicile in that state. These laws are liberal in their provisions, and the courts of that state have construed them with great liberality. For example, in Gilworth v. Cody, 21 Kan. 702, where the owner of an 80-acre tract of vacant land had begun to dig a cellar with a view of erecting a house, but had never lived on the land, and before he had lived on it an attachment was levied on it, it was held that the owner could claim it as a homestead, notwithstanding the attachment, since it appeared that he had bought it with a view of making it his home. It is also held, in that state, that the use of property that is not exempt from execution, to procure a homestead, even when one is insolvent, is not a fraudulent act as respects his creditors, because that which the law expressly sanctions and permits cannot be a legal fraud. Sproul v. Bank, 22 Kan. 336. It was also conceded, in the opinion of the lower court, that, under the laws of Kansas, when an execution is issued against a debtor he may move upon land which he owns, with a view of saving it as a homestead, if he acts in good faith for that purpose, and occupies it before the actual levy of the execution. This court, also, in the case of Bank v. Glass, 25 C. C. A. 151, 79 Fed. 706, held that an insolvent debtor, under the laws of the state of Kansas, may dispose of property which is not exempt from execution, and with the proceeds purchase a homestead, and hold it exempt from his creditors. Such conduct on the part of an insolvent debtor, if the case discloses nothing more than the acquisition, in good faith, of a homestead with property or the proceeds of other property which is not exempt, is not fraudulent, because one who thus acts does no more than the homestead laws of the state permit and encourage him to do. Such being the rights which the laws of that state confer upon an insolvent debtor, we can conceive of no sufficient reason why a person who occupies one piece of property as a homestead may not, within four months preceding the institution of bankruptcy proceedings, abandon that property, and take up his abode upon another piece of property which is more valuable or more eligible as a homestead, provided he acts in good faith. The bankrupt law does not, during the four-months period, disable persons from exercising any of the rights which local exemption laws confer. The fact that the homestead last chosen by the appellant may have been more valuable than the first is not material, because, as before shown, he could have appropriated property which was not exempt to the purchase of a homestead, and in that event his creditors would have no right to complain. We have not overlooked the authorities which seem to have been relied upon below in denying to the bankrupt the exemption which he claimed, namely, In re Wright, 30 Fed. Cas. 660, 8 N. B. R. 430, and In re Boothroyd, 14 N. B. R. 223, 230, 3 Fed. Cas. 892. Neither of these cases seems to us to sustain the decree below. In the first of these cases it appeared that an insolvent debtor, two weeks before proceedings in bankruptcy were instituted, sold or mortgaged his homestead for

cash, not accounting for the proceeds; and that he moved with his family into a store, which he used for business purposes, and claimed that as a homestead. It was held that under these circumstances the bankrupt was not entitled to shift his homestead, but the decision proceeded upon the theory that the bankrupt's conduct was fraudulent in that he had sold or mortgaged his real homestead, and had pocketed the proceeds, and had also, very shortly before his failure, made very large purchases, and had obtained credit on the strength of his ownership of the business property which he attempted to hold as exempt. In the other case, one member of a firm had taken firm money, to the amount of $2,250, three days before the bankruptcy of the firm, and with that money had purchased a piece of property which he claimed as a homestead. It was held that partnership funds could not be thus taken, and used to purchase a homestead, by one member of a firm. That case, however, contains a reference to the case of O'Donnell v. Segar, 25 Mich. 367, in which the supreme court of that state held, as the courts of Kansas hold, that an insolvent person can lawfully dispose of property which is subject to execution, and use the proceeds to purchase a homestead. It also contains a reference to another case (In re Henkel, 2 Sawy. 305, 11 Fed. Cas. 1124), in which it was held that, under the laws of the state of California, an insolvent debtor may lawfully devote money, which is not exempt, to the payment of a debt which is a lien upon his homestead, and that his creditors have no right to complain; also, that a person, at any time before the lien of a judgment has attached to property, may lawfully declare a homestead therein. In this case, it appears that the bankrupt acquired the farm two years before he became a bankrupt, and had paid for the same; that, in making the statement of his assets on January 17, 1900, he did not schedule the farm as a part of his assets, for the purpose of obtaining credit; and that no one sold him any goods, or extended to him any credit, on the faith of his ownership of the farm, so far as the present record discloses. Under these circumstances, we are constrained to hold that he had the right, even as late as March 13, 1900, to abandon one homestead, and take up his abode on the farm, and claim that as exempt.

It follows, therefore, that the order of the lower court was erroneous, and the same is hereby reversed, and the cause is remanded to the lower court, with directions to allow the exemption which was claimed by the bankrupt.