### In re WILSON.

(Circuit Court of Appeals, Ninth Circuit. May 18, 1903.)

No. 903.

1. BANKRUPTCY—HOMESTEAD EXEMPTION—PAYMENT OF MORTGAGE WHILE INSOLVENT.

Under the Constitution and statutes of California, as construed by the Supreme Court of the state, which, under the bankruptcy law, furnish the rule governing the exemptions of a bankrupt in that state, the use of funds by an insolvent debtor to purchase a homestead or to discharge a lien thereon is not fraudulent, and does not invalidate his claim to the homestead exemption, or give his trustee in bankruptcy the right to subject the homestead to a lien for the amount so diverted from his creditors.

Ross, Circuit Judge, dissenting.

Petition for Revision of Proceedings of the District Court of the United States for the Northern District of California.

Joseph C. Meyerstein, for petitioner.

A. B. Ware, for respondents.

¶ 1. See Fraudulent Conveyances, vol. 24, Cent. Dig. § 54; Homestead, vol. 25, Cent. Dig. § 87.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The appeal in this case is taken from an order of the District Court sustaining the ruling of the referee in bankruptcy, whereby the bankrupt's homestead was held exempt. In November, 1886, the bankrupt acquired the homestead property. On October 12, 1899, his wife filed for record a declaration of homestead upon the same. On February 5, 1902, while the bankrupt was in business as a grocer, he sold out his stock of merchandise for $4,250, which was its fair value. At the time of the sale a loan association held a mortgage on the homestead property for $1,950. On February 6, 1902, the bankrupt, out of the proceeds of the sale of his grocery business, paid off the mortgage and paid certain other creditors, but made no payment to the creditors who had sold him goods for his grocery business, and others, whose claims amounted to $4,843.11. On February 11, 1902, a petition in bankruptcy was filed against him by certain creditors, and on March 4, 1902, he was adjudged an involuntary bankrupt. On February 14, 1902, he filed his declaration of homestead on the same premises declared upon by his wife. It is the object of the trustee by the present proceeding to set aside the order of the referee allowing the exemption of the said homestead, and to subject said homestead to a lien of $1,950 for the benefit of the creditors.

The question here presented is one upon which there is some conflict of authority. In Pratt v. Burr, 5 Biss. 36, Fed. Cas. No. 11,372, decided by Miller, District Judge of the District of Wisconsin in 1857, a firm of merchants in the possession of a stock of goods replenished their stock by the purchase of goods upon credit. After acquiring possession of the goods so purchased, they transferred their whole stock in fraud of their creditors, and took in exchange therefor the premises which they claimed as homesteads. Said the court:

"The mere statement of the facts decides the case in the conscience of every honest man. * * * A party cannot turn that which is furnished him for the comfort of himself and family into an instrument of fraud."

To the same effect is In re Wright, 3 Biss. 359, Fed. Cas. No. 18,067, decided by the same judge in 1872; holding that an insolvent merchant who sold his homestead for cash could not invest the proceeds and other of his property in another homestead, to the prejudice of his creditors. But in Palmer v. Hawes, 80 Wis. 474, 50 N. W. 341, the Supreme Court of Wisconsin held that where a debtor greatly embarrassed and insolvent had changed her homestead to other property, and had used her means in paying off an incumbrance thereon, the transaction was not fraudulent as to creditors; the evidence failing to show any fraudulent purpose on her part. Again, in the case of In re Boothroyd, 3 Fed. Cas. 892 (No. 1,652), Mr. Justice Brown, then the District Judge of the Eastern District of Michigan, held that where a member of a copartnership took notes belonging to the firm, and therewith purchased a homestead three days before the bankruptcy of the firm, and with knowledge of its insolvent condition, he was not entitled to retain the homestead as exempt. That

was a case, it is true, involving equitable considerations arising out of the diversion of partnership assets, but the learned judge proceeded to say:

"Indeed, if the facts in this case called for it, I think I should be prepared to go much further, and to hold that a debtor, knowing himself to be insolvent, has no right, upon the eve of bankruptcy, to take his property and invest it in a homestead."

But the Supreme Court of Michigan, in a case decided later (Meigs v. Dibble, 73 Mich. 101, 40 N. W. 935), held that there was no rule of law of that state to prevent a person whose indebtedness is in excess of his resources from using a portion of his property to purchase a homestead, and that such action is not a fraud upon creditors. Recently, in Re Joel v. Boston, 3 Am. Bankr. Rep. 388, 98 Fed. 587, Munger, District Judge of the District of Nebraska, affirmed, without discussion or the citation of authorities, the ruling of a referee in bankruptcy, that where the bankrupt, a few days before filing his voluntary petition, disposes of his property, and applies the proceeds in partial payment of a mortgage on his homestead, such payment will be regarded as in fraud of the bankruptcy laws, and the creditors will be subrogated to the mortgage creditors upon the homestead, to the extent of the payment so made thereon.

But the decided weight of authority sustains the doctrine that, where a homestead exemption is allowed by state law, an insolvent debtor may, out of the proceeds of a failing business, either purchase a homestead, or pay off an existing incumbrance thereon, and hold the same against the claims of his creditors, whether proceedings to subject the same to his debts be instituted under the state laws or under the national bankruptcy act. The reason assigned for this rule is that all persons dealing with or giving credit to such a debtor must be presumed to do so with a knowledge of the homestead exemption law, and in view of the right of the debtor to place his property in the form of such homestead, and thereby beyond the reach of their demands. Kelly v. Sparks (C. C.) 54 Fed. 70; Backer v. Meyer (C. C.) 43 Fed. 704; First National Bank of Humboldt v. Glass, 25 C. C. A. 151, 79 Fed. 706; In re Tobias (D. C.) 103 Fed. 68; Randall v. Buffington, 10 Cal. 491; Fitzell v. Leaky, 72 Cal. 477, 14 Pac. 198; In re Henkel, 2 Sawy. 305, Fed. Cas. No. 6,362; Jacoby v. Distilling Co., 41 Minn. 227, 43 N. W. 52; Sproul v. Bank, 22 Kan. 336; Cipperly v. Rhodes, 53 Ill. 346; Bradley v. Gotzian, 12 Wash. 71, 40 Pac. 623; Tucker v. Drake, 11 Allen, 145.

The bankruptcy act provides that the allowance of exemptions prescribed by state laws shall not be affected. The Constitution and statutes of California, therefore, as construed by the decisions of the courts of that state, must, independently of other authority, control our decision in this case. In Randall v. Buffington, supra, it was held that there is no rule of the law which prevents a debtor in insolvent circumstances from using the money which he has to pay off a mortgage on his homestead. In Fitzell v. Leaky, supra, the court said:

"It has never been held that a homestead was invalidated because the declarant was in debt, or declared the homestead to protect it from existing

debts. * * * The law authorizes a debtor to erect a barrier around the home, over which the sheriff, although armed with final processes under such a judgment, cannot pass. With the policy of the law or the abstract morality of a transaction, we have nothing to do. The doctrine bearing upon conveyances made to hinder, delay, or defraud creditors has no application to the creation of a homestead."

In Simonson v. Burr, 121 Cal. 682, 54 Pac. 87, the doctrine of Fitzell v. Leaky was expressly approved. In Re Henkel, supra, Judge Hoffman held that, under the laws of the state of California, the exemption of a homestead from forced sale remains, notwithstanding that an insolvent has invested moneys which equitably belong to all his creditors to the payment of a debt which was a lien on the homestead.

It is contended that Shinn v. Macpherson, 58 Cal. 596, supports the appellant's contention. In that case the husband of a wife who had filed a declaration of homestead fraudulently abstracted funds from the assets of the firm of which he was a member, and therewith paid and discharged a mortgage lien, leaving the homestead clear; thereby defrauding his partner and the creditors of the firm. The court held, in substance, that the homestead exemption was never intended to be a safe refuge in which to deposit fraudulently acquired money. We make no question of the justice of that decision. The case at bar is not such a case. It is not alleged or shown that the bankrupt fraudulently obtained the goods which constituted the stock of his merchandise, or that he became indebted to his creditors for the purpose of defrauding them. The only charge of fraud is that he fraudulently used the funds which he obtained on the sale of his goods. The decisions of Supreme Court of California decide that there can be no fraud in the diversion of such funds by an insolvent debtor, either to procure a homestead, or to discharge a lien thereon.

The judgment of the District Court is affirmed.

ROSS, Circuit Judge. I dissent. It is true that the California homestead law provides that the homestead can only be conveyed or incumbered by an instrument executed and acknowledged by both the husband and wife, and also exempts it from execution or forced sale except in certain enumerated cases. But these provisions of the statute the Supreme Court of the state held, in the case of Shinn v. Macpherson, 58 Cal. 596, had no application to a case where a husband fraudulently abstracted funds from the assets of a firm of which he was a member, and which was indebted to third parties, and with those funds paid off and discharged a mortgage upon the homestead of himself and wife; thus leaving the homestead clear, and the firm creditors, as well as his partners, defrauded. The court in that case had no difficulty in affirming a decree adjudging a lien upon the homestead, paramount to the homestead right, for the amount paid by Macpherson in discharging the mortgage lien, and adjudging a sale of the premises to satisfy such preferred lien; in its opinion saying:

"In our opinion, there is no provision of the homestead law that affords a cloak for such a transaction. That law was enacted for beneficent pur-

poses, designed to secure a home for the family, but, as said by counsel for respondent, was never intended 'to be a secure and impregnable asylum in which to deposit peculations from others.' It is true that the statute provides that the homestead can only be conveyed or incumbered by an instrument executed and acknowledged by both husband and wife, and also that it is by the statute exempted from execution or forced sale, except in certain enumerated cases. But these provisions of the statute have no application to the case before us. The one regulates the mode of transfer or incumbrance of the homestead between the spouses and third persons, when the same is to be effected by conventional arrangement, not by act and operation of law; the other was designed to protect it from forced sale for ordinary indebtedness, etc., not as an immunity from torts and their legal consequences. Shoemake v. Chalfant, 47 Cal. 435; Riddell v. Shirley, 5 Cal. 488; Bishop v. Hubbard, 23 Cal. 514 [83 Am. Dec. 132]."

That decision of the Supreme Court of California has never been overruled or questioned, so far as I am advised; and the principle of it, which is but a rule of common honesty, is, in my opinion, quite as applicable to the facts of the present case.