## CRAWFORD et al. v. STERNBERG.

(Circuit Court of Appeals, Eighth Circuit. January 4, 1915.)

### No. 144, Original.

1. BANKRUPTCY ⟺136—ORDER FOR DELIVERY OF PROPERTY TO TRUSTEE—INABILITY AS DEFENSE.

That members of a bankrupt partnership had paid out money withdrawn by them from the firm assets the day preceding the adjudication in bankruptcy, and had no other means, and therefore were unable to pay such money to the trustee, was a sufficient defense to an application to require them to repay such money.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. ⟺136.]

2. BANKRUPTCY ⟺183—PARTNERSHIP AND INDIVIDUAL CREDITORS—RIGHTS.

Where, by mutual consent, the members of a bankrupt partnership withdrew money from the firm assets the day preceding the adjudication, and applied it to the payment of individual debts, they could not be required to return it, as Bankr. Act July 1, 1898, c. 541, § 5f, 30 Stat. 547, 548 (Comp. St. 1913, § 9589), providing that the net proceeds of partnership property shall be appropriated to the payment of partnership debts, and the net proceeds of the individual estate of each partner to the payment of individual debts, applies to the property constituting partnership and individual property at the commencement of the bankruptcy proceedings and to property fraudulently transferred, and the power of the partners to transform individual property into partnership property, or partnership property into individual property, continues until the property is placed in custody of the law for administration.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 282; Dec. Dig. ⟺183.]

3. BANKRUPTCY ⟺397—EXEMPTIONS—PARTNERSHIP AND INDIVIDUAL PROPERTY.

Though, under Kirby's Dig. Ark. § 3903, exempting personal property of the value of $200 to unmarried persons, not the head of the family, a member of a firm may not claim such exemption out of the partnership assets, where partners by mutual consent took $200 each from the assets of the partnership on the day preceding the adjudication in bankruptcy against the partnership, such money became their separate property and subject to their claims of exemption, as the firm's control of the partnership property and the right to transfer it in whole or in part to strangers or to members thereof, even if the firm is insolvent, continues until the property goes into the custody of the law, and it is not a fraudulent

transfer for an insolvent person to convert property which is not exempt into property which is exempt for the purpose of claiming his exemptions therein.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 678; Dec. Dig. 397.]

Petition to Revise Order of the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Bankruptcy proceeding against Claud F. Crawford and another. On petition to revise an order requiring the bankrupts to pay over money to M. Sternberg, trustee. Petition granted, and order reversed.

Ben D. Kimpel and Harry P. Daily, both of Ft. Smith, Ark., for petitioners.

W. S. Chastain, of Ft. Smith, Ark., for respondent.

Before CARLAND, Circuit Judge, and T. C. MUNGER, District Judge.

T. C. MUNGER, District Judge. On March 4, 1914, a petition in bankruptcy was filed by a partnership, which was engaged in mercantile business in Arkansas, and an adjudication in bankruptcy was entered on the same day. The next day the individuals constituting the partnership filed petitions in bankruptcy and were adjudicated bankrupts. The District Court made an order that the partners each pay over to the trustee of the partnership, the sum of $200 and a petition to revise that order is the subject of this case.

[1, 2] The partners, each acting with the consent of the other, withdrew this money from the assets of the partnership on the day preceding its adjudication in bankruptcy, at a time when the partners and the partnership were insolvent, but when no action was pending against any of them. The money was so taken on the theory that each partner had the right to segregate that sum as his individual property, and to claim it as exempt under the laws of Arkansas, and it was scheduled and claimed to be exempt in the individual schedules in bankruptcy filed by them. A portion of this money was applied by each partner, before the trustee made application for its return, to the payment of individual debts owing by him, and neither has other assets, except the remainder of the $200 not so expended. The fact that the defendants had paid out this money and had no other means, and therefore were unable to repay it to the trustee, was a sufficient defense to this application for its return. Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413; Boyd v. Glucklich, 116 Fed. 131, 53 C. C. A. 451; In re Mize (D. C.) 172 Fed. 945. The money so expended was not subject to an order for its return as a part of the partnership estate, for the further reason that it had been, by the consent of the partners, applied to the payment of individual debts of the partners. This was the effect of the decision in the case of Sargent v. Blake, 160 Fed. 57, 87 C. C. A. 213; 17 L. R. A. (N. S.) 1040, 15 Ann. Cas. 58, in which this court held:

"The clause of section 5f upon which counsel rely is nothing but the familiar rule of administration of partnership and individual estates, which has been

imported into the bankruptcy law from the courts of equity. 'The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts, and the net proceeds of the individual estate of each partner to the payment of the individual debts.' The partnership property and the individual estate at what time—four months, or at some indefinite time within four months, before the petition is filed, or at the time it is filed? This section treats of administration in the bankruptcy court, and hence of the partnership and individual property, the title to which is in the bankrupt at the time the petition against him is presented to the court and that which he had transferred in fraud of his creditors. Section 70. Any other interpretation would produce intolerable vexation and confusion, for in the daily conduct of business partners are necessarily and constantly applying partnership property to the payment, not only of large individual obligations, but to the payment of their petty individual debts for living expenses, and are often devoting their individual property to the promotion of the partnership business and the discharge of the partnership debts. It never could have been, it never was, the intention of Congress that these transactions—these transformations of partnership into individual and of individual into partnership property within four months, or within any other time preceding the commencement of bankruptcy proceedings—should either be rescinded or avoided by subsequent adjudications in bankruptcy, unless they were actually fraudulent or voidably preferential. It did not make them fraudulent in themselves. The terms of section 5f, and the natural and rational interpretation of them in the light of the general rules of law and of the entire act in which they appear, limit their application to partnership and individual property at the commencement of bankruptcy proceedings, and to property the transfer of which is fraudulent for other reasons than that partnership property was applied to the payment of individual debts, or individual property to the payment of partnership debts. This conclusion is in accord with the general principles applicable to the management and disposition of partnership property.

"There are two rules of law which at different times apply to the management and disposition of the property of a partnership: First, partners own, and, with the consent of each, have the right and power to sell and dispose of, the partnership property, to transform it into the individual property of one or more of the partners, to apply it or its proceeds to the payment of their individual debts in preference to those of the partnership, and to make such other honest disposition of it as they deem fit; second, in the administration of the property of a partnership in the courts the creditors of the partnership have the right to the application of the partnership property to the payment of the partnership debts in preference to the individual debts of the respective partners. The first is a rule of operation; the second a rule of administration. The first governs during the operation of the partnership business and the disposition of the partnership property by the partners; the second operates during the administration of the partnership property after it is brought into the custody of a court. The first rule prevails until by some suit or act the interposition of some court is invoked to administer the partnership property; and until that time the second rule is ineffective. Before the partnership property is placed in custodia legis for administration, it is not held in trust for the payment of the partnership creditors in preference to the creditors of the individual partners. The partnership creditors have no lien upon it, and no independent right to its application to the payment of their claims in preference to the claims of the creditors of the individual partners. Each partner, however, has the right to require the partnership property to be applied to the payment of the partnership debts in preference to the debts of the individual partners, to the end that he may not be required to pay the former out of his individual estate. The right of the creditors of the partnership to payment out of the partnership property in preference to the individual creditors is the mere right by subrogation or derivation to enforce this right of one of the partners after the partnership property has been placed in the custody of the law. Until it has been so placed, each partner has plenary power at any time to release or waive this right; and if each partner has done so, and at the time the property comes within the jurisdic-

tion of a court no partner has this right, then no creditor of the partnership
has it, for a stream cannot rise higher than its source."

[3] The unexpended portions of the sums of money taken by the
partners are claimed by them to be exempt under the law of Arkansas.
Under the statutes of that state, it has been determined that the in-
dividuals constituting a firm may not select exemptions out of the
partnership assets (Richardson v. Adler, Goldman & Co., 46 Ark. 43;
Porch v. Arkansas Milling Co., 65 Ark. 40, 45 S. W. 51, 67 Am. St.
Rep. 895; In re Handlin, 3 Dill. 290, 11 Fed. Cas. 6,018; In re Meri-
wether [D. C.] 107 Fed. 102); but such selection may be made when
the interests of the partners have been ascertained and segregated
(Farmers' Union Gin & Milling Company v. Seitz, 93 Ark. 329, 124
S. W. 780).

In the present case, the partners by mutual consent transferred to
each other portions of the firm's money; and unless this transfer was
fraudulent, the money became the separate property of the individ-
uals and subject to their claims of exemption (section 3903, Kirby's
Digest Laws Ark.), as the firm's control of the partnership property,
and the right to transfer it in whole or in part, to strangers or to
each other, even if the firm is insolvent, continues until it comes into
custody of the law (Sargent v. Blake, supra; Case v. Beauregard,
99 U. S. 119, 25 L. Ed. 370; Fitzpatrick v. Flannagan, 106 U. S. 648,
1 Sup. Ct. 369, 27 L. Ed. 211; Huiskamp v. Moline Wagon Co., 121
U. S. 310, 7 Sup. Ct. 899, 30 L. Ed. 971).

There is no claim of fraud in the severance of these sums of money
into individual ownership, except that it took from partnership cred-
itors a fund to which they could have resorted if it had remained
partnership assets until placed in the custody of the law, and placed
it among the individual assets, where it was subject to a claim of
exemption, and that this was done for that purpose, and when it was
known to the partners that they and the firm were insolvent and in an-
ticipation of early proceedings in bankruptcy. It is well settled that
it is not a fraudulent act by an individual who knows he is insolvent
to convert a part of his property which is not exempt into property
which is exempt for the purpose of claiming his exemptions therein,
and of thereby placing it out of the reach of his creditors. Flask v.
Tindall, 39 Ark. 571; In re Irvin, 120 Fed. 733, 57 C. C. A. 147;
Huenergardt v. John S. Brittain Dry Goods Co., 116 Fed. 31, 53 C.
C. A. 505; First National Bank v. Glass, 79 Fed. 706, 25 C. C. A.
151; In re Wilson, 123 Fed. 20, 59 C. C. A. 100; In re Thompson
(D. C.) 140 Fed. 257; O'Donnell v. Segar, 25 Mich. 367; Randall
v. Buffington, 10 Cal. 491; Cipperly v. Rhodes, 53 Ill. 346; Meigs v.
Dibble, 73 Mich. 101, 40 N. W. 935; Jacoby v. Parkland Distilling
Co., 41 Minn. 227, 43 N. W. 52; Palmer v. Hawes, 80 Wis. 474, 50
N. W. 341; Thomp. on Homesteads & Ex. §§ 305–309.

This has become an established principle, because the statutes grant-
ing exemptions have made no such exceptions, and because the policy
of such statutes is to favor the debtors, at the expense of the creditors,
in the limited amounts allowed to them, by preventing the forced loss
of the home and of the necessities of subsistence, and because such

statutes are construed liberally in favor of the exemption. As it is not fraudulent for an individual debtor to convert property which is not exempt into that which is, it is not fraudulent for individuals constituting a partnership to sever the joint interest in partnership property, which is not yet in the custody of the law, and thereafter to hold their exemptions out of such property. Goudy v. Werbe, 117 Ind. 154, 19 N. E. 764, 3 L. R. A. 114; Mortley v. Flanagan, 38 Ohio St. 401; Worman v. Giddey, 30 Mich. 151; Bates v. Callender, 3 Dak. 256, 16 N. W. 506; Lee v. Bradley Fertilizer Co., 44 Fla. 787, 33 South. 456; Fairfield Shoe Co. v. Olds, 176 Ind. 526, 96 N. E. 592; In re Phillips (D. C.) 209 Fed. 490; 2 Freeman on Execution (3d Ed.) § 221.

Petition to revise granted, and order reversed.