In re Hugh D. REED and Sharon Marcus Reed, Debtors.

Jack P. DRISKILL, Trustee, Plaintiff,

v.

Hugh D. REED and Sharon Marcus Reed, Defendants.

Bankruptcy No. 579–00106.
Adv. No. 580–0024.

United States Bankruptcy Court,
N. D. Texas,
Lubbock Division.

June 9, 1981.

**42**

Jack McClendon, Lubbock, Tex., for debtor.

David Langston, Lubbock, Tex., for plaintiff.

Jack P. Driskill, Lubbock, Tex., trustee.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

The debtors filed petition for order for relief under Chapter 7 of Title 11, United States Code, on December 21, 1979. During the two week period preceding the filing of the petition the debtors, obviously engaging in prebankruptcy planning, sold nonexempt personal property for approximately 50% of the value which they had assigned to those properties and applied the proceeds of $34,500.00 towards liquidation of liens against their residence homestead. The trustee filed complaint challenging entitlement to the exemptions. The following summary constitutes the findings of fact contemplated by Rule 752 after nonjury trial.

Since his childhood Hugh D. Reed had collected approximately 35 guns, some of them commemorative guns or otherwise having collector's value. On a financial statement dated April 1, 1979, he had valued the gun collection at $20,000.00. On December 11, 1979, ten days prior to filing the petition in bankruptcy, he sold the entire gun collection to a friend, Steve Gallagher, for $5,000.00 cash.

Reed had been an antique collector, also. On the April 1, 1979, financial statement he had valued his antiques at $3,000.00. Three months later, in August, 1979, he purchased additional antiques from an estate for $11,000.00. In late November, 1979, he sold three items from the antique collection to an acquaintance, Charles Tharpe, for $3,500.00, applying the proceeds to payment of a note to Bank of the West. On December 11, 1979, he sold the remaining antiques to the friend, Steve Gallagher for $5,000.00 cash.

In November, 1979, approximately one month prior to the commencement of the bankruptcy proceedings, he purchased for $15,000.00 an interest in a corporation with the intriguing name of Triple BS Corporation. He sold that interest to the friend, Steve Gallagher, on December 11, 1979, for $5,000.00 cash.

In three separate transactions between October 5, 1979, and November 13, 1979, Reed had purchased gold coins—Krugerrands and Mexican Pesos—for the total sum of $22,115.00. On or about December 10, 1979, he sold those coins for $19,500.00 cash.

Thus, ten days prior to bankruptcy debtor sold nonexempt assets with aggregate value of $68,500.00 (according to their financial statements or based upon the amount actually paid by them on recent purchases), receiving as proceeds the sum of $34,500.00. They received market value for the gold and when that transaction is not considered they received less than 20% of the apparent value of the guns, the antiques and the interest in Triple BS Corporation.

In October 1978, the debtors had executed a note and mechanic's lien to a lend-

ing institution in the sum of $20,000.00 to pay for improvements to their residence, consisting of a sun-deck room, swimming pool and pool facilities. On December 11, 1979, $19,892.00 from the proceeds of sale of nonexempt assets were applied to pay off that improvement loan. The balance of $15,000.00 was applied by the debtors towards the vendor's lien note against the residence, reducing the balance of that note to approximately $28,000.00.

The scope of this memorandum is narrow. The trustee insists that the homestead exemption on the residence should be avoided, because of the flagrant prebankruptcy planning in which they engaged. As evidence of fraudulent intent, the trustee contends that the debtors received less than a reasonably equivalent value [1] for the nonexempt assets. Mr. Reed very candidly testified that had he received more money for the nonexempt assets he would have applied those additional monies to the homestead liens. The issue as to whether the homestead exemptions may be set aside under those facts is clearly drawn.

The debtor, in support of his contention that he could properly pay the liens with proceeds of nonexempt property, and thus engage in obvious exemption planning, cites a comment in the legislative history following § 522(b):

"As under current law, the debtor will be permitted to convert nonexempted property into exempt property before filing a bankruptcy petition. See Hearings, pt. 3, at 1355–58. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law."

While that language may express the law in some jurisdictions, it is not universally true. Certainly it is not an accurate expression of Texas law because Texas law specifically prohibits the retention of an exemption in personal property so acquired with proceeds of nonexempt property where there was intent to defraud, delay or hinder a creditor or other interested persons.[2]

In this case, however, there was no proof that the debtors had applied the proceeds to acquisition of exempt personal property. All of the evidence indicates that the entire proceeds of $34,500.00 were applied on the real estate liens. The Texas legislature, at the time it adopted V.A.T.S. Article 3836(b), had the opportunity to include the same language in V.A.T.S. Article 3833, which provides the homestead exemption in real estate. It failed to do so, and had it included that type of language it is doubtful that it would have passed constitutional muster. Historically Texas law has jealously protected the homestead from forced sale except under very limited conditions. Article 16, § 50 [3] of the Texas Con-

---

1. The issue as to whether the debtors, in so converting nonexempt assets to exempt assets in this fashion, had transferred property in such manner that they have avoided their right to discharge will be covered in the memorandum in the consolidated adversary proceedings numbered 580–0018, 580–0019, and 580–0025. The issue as to whether Gallagher gave reasonably equivalent value for the assets may be considered in separate adversary proceedings under § 548.

2. Art. 3836(b) The use of any property not exempt from attachment, execution and every type of forced sale for the payment of debts to acquire property described in Subsection (a) of this article, or any interest therein, to make improvements thereon, or to pay indebtedness thereon with the intent to defraud, delay or hinder a creditor or other interested person from obtaining that to which he is or may become entitled shall not cause the property or

interest so acquired, or improvements made to be exempt from seizure for the satisfaction of liabilities under Subsection (a) of this article.

3. Art. 16, § 50. The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead; nor may the owner or claimant of the property claimed as homestead, if married, sell or abandon the homestead without the consent of the other spouse, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever

stitution prohibits forced sale for any purpose except for purchase money liens, improvement liens, or taxes.

That provision in the Texas constitution prohibits the granting of the relief sought by the trustee in this case and the challenge to the homestead exemption in the residence is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.

be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void. This amendment shall become effective upon its adoption.