In re William T. OLSON and Mary A. Olson, Debtors.

**Bankruptcy No. 4–84–1260.**

United States Bankruptcy Court, D. Minnesota.

Nov. 16, 1984.

Jeffrey H. Olson, Brooklyn Center, Minn., for debtors.

Edward W. Bergquist, Minneapolis, Minn., Trustee.

## ORDER

MARGARET A. MAHONEY, Bankruptcy Judge.

This matter came on for hearing before the undersigned Judge on November 2, 1984 on the motion of the debtors for an order approving their claimed homestead exemption under 11 U.S.C. § 522(b) and M.S.A. § 510.01. The trustee objects to the exemption of a portion of the homestead, specifically the amount of the exemption gained by payments on the mortgages on the premises in the amount of $19,783.57.[1] For the reasons outlined below, I find that the exemption of all of the homestead value by debtors is proper.

## FACTS

1. Debtors filed a joint Chapter 7 bankruptcy petition on July 20, 1984. Debtors amended this petition on September 19, 1984 to reflect an amended answer to Question No. 13 on the Statement of Financial Affairs and to reduce the area of the lot claimed as exempt homestead property on Schedule B–4.

2. Debtors' schedules list secured debt of $27,310.90 and unsecured debt of $126.55. Debtors list total assets of $105,-000 of which they list $102,000 as exempt.

---

1. Trustee also initially objected to the size of the lot claimed as a homestead under M.S.A. § 510.-02. Debtors amended their B–4 schedule of exempt property to decrease the size of the homestead claimed so as to comply with the statute.

3. Debtors' homestead has a scheduled value of $90,000.00. There are no outstanding mortgages against the property.

4. The secured claims of Debtor are business debts relating to debtors' defunct Gambles Store operation. The debts are secured by inventory, accounts receivable and fixtures. The $27,310.90 debt is the amount due and owing to Gambles and the Norwest Bank after liquidation of all of the security and application of the proceeds to the secured debts.

5. Prior to March 1984, debtors had investments and savings accounts as follows:

| | |
|---|---|
| AT & T Stock | $5,878.00 (sold 4/16/84) |
| First Federal Savings & Loan certificate of deposit | $2,457.00 (sold 3/84) |
| IDS Bond | $8,765.00 (sold 3/30/84) |
| IDS Bond | $4,427.00 (sold 3/11/84) |
| IDS Cash Management | $2,000.00 (sold 3/30/84) |
| 1st State Federal Savings Account | $346.32 |
| 1st State Federal Savings Account | $911.00 |
| 1st State Federal Savings Account | $3,268.00 |
| TOTAL: | $28,052.32 |

6. Debtors liquidated the above assets and used $19,783.57 to satisfy an existing first and second mortgage on their homestead. The payments on the mortgages were made as follows:

| | | |
|---|---|---|
| 4/9/84 – | $10,762.77 | (to satisfy second mortgage to Norwest Bank Litchfield) |
| 6/5/84 – | $7,000.00 | (to prepay a portion of first mortgage to Norwest Bank Litchfield) |
| 6/6/84 – | $2,020.80 | (to satisfy Norwest Bank Litchfield first mortgage) |

7. Debtors closed their Gambles Store on March 9, 1984 by turning it over to Gambles.

8. The debtors' savings shown in Paragraph 5 were all accumulated prior to September 15, 1976, when debtors purchased the Gambles Store. At the time of purchase, debtors had savings of approximately $47,000, part of which was invested in the store over the years from 1976 to 1984.

9. Other than the extraordinary payments made in Paragraph 6, no other payments other than normal mortgage payments were made on the homestead.

10. Debtors are 55 and 56 years of age. Mrs. Olson is unemployed. Mr. Olson presently has a part time job. Mr. Olson has had a heart attack and coronary bypass surgery recently.

11. Debtors stated that the reason they paid off the two mortgages on their homestead was to reduce their monthly living expenses. They knew it would be difficult for them to find employment after they terminated their business. They also stated that, on the advice of their attorney, they put their savings into their homestead to protect the homestead.

12. None of the debtors' savings were borrowed funds.

13. None of the debtors' savings were receipts from their business.

14. None of the debtors' savings had been promised to creditors.

15. Debtors first consulted a lawyer in March of 1984 prior to closing their store.

## CONCLUSIONS

1. Debtors properly claim the real property legally described as:

Lots 4, 5, 10 and 11, City of Litchfield, according to the plat thereof on file and of record except the westerly 90 feet.

as homestead property.

## DISCUSSION

Debtors claimed their exempt property under 11 U.S.C. § 522(b)(2). This section of the Bankruptcy Code allows a debtor to exempt property under certain Federal laws and "state and local law that is applicable on the date of filing." The only exemption that debtors claim that is at issue in this case is the total exemption of their homestead property under Minnesota

Statute § 510.01.[2] This statute was in effect on the date of debtors' filing of their bankruptcy petition and thereby is properly applicable under 11 U.S.C. § 522(b)(2).

There is no dispute that the property claimed is the debtors' homestead or that it is within the area limitations of Minnesota Statute § 510.02 now that debtors have amended their petition. The sole issue is whether debtors may exempt $19,783.57 of the homestead value which represents non-exempt assets admittedly placed in an exempt asset by satisfaction of mortgages against the property. These transfers took place within 5 months of the filing of debtors' bankruptcy petition.

## I.

 It is clear that Minnesota law and the case law interpreting it will govern in this case since debtors have claimed their homestead under the Minnesota exemption statute. *Page v. Edmunds*, 187 U.S. 596, 47 L.Ed. 318, 23 S.Ct. 200 (1903); *Vought v. Kanne*, 10 F.2d 747 (8th Cir.Minn.1926), cert. dismd., 275 U.S. 574, 72 L.Ed. 433, 48 S.Ct. 16. Minnesota case law liberally construes the homestead exemption statutes. *Denzer v. Prendergast*, 267 Minn. 212, 126 N.W.2d 440 (1964); *Holden v. Farwell, Ozmun, Kirk & Co.*, 223 Minn. 550, 27 N.W.2d 641 (1947); *Ferguson v. Kumler*, 27 Minn. 156, 6 N.W. 618 (1880). As stated in *Ferguson, supra;*

> The word "homestead" is used in this statute in its ordinary and popular sense, to designate a dwelling place used and occupied as a home for its owner, and his family, if he have one.... It comprises fitness in the place for the uses of a home, which includes a dwelling-house and more or less land connected therewith, and residence use and occupancy by the owner as a home for himself and also for his family, if he have one.

> These are the essential tests of a homestead in fact, and whenever these facts exist there is a homestead which has already been selected or chosen, and which the statute was intended to protect absolutely in favor of the owner and his family, subject simply to a limitation upon the quantity of land allowed to be retained as a part of it.... At 27 Minn. 159–160 [6 N.W. 618].

Therefore, it is clear that the Minnesota homestead exemption arises from the premise that it is to be viewed liberally in favor of the debtor.

## II.

 The only issue to be faced here is whether debtors should be allowed to claim their entire homestead as exempt property, not whether the debtors actions in obtaining their exemption somehow should prevent their discharge. Many of the reported cases in the bankruptcy field on exemptions deal with the issue of the debtor's discharge and whether it should be granted in light of the manner of debtor's obtaining his or her exempt property. The cases usually request a denial of discharge under 11 U.S.C. § 727(a)(2) or § 727(a)(5). As stated in *In re Reed*, 700 F.2d 986 (5th Cir. 1983):

> While the Code requires that, when the debtor claims a state-created exemption, the scope of the claim is determined by state law, it sets separate standards for determining whether the debtor shall be denied a discharge. The debtor's entitlement to a discharge must, therefore, be determined by federal, not state, law. At 700 F.2d 991.

The discharge cases under federal law revolve around the issue of whether the debtor's transfer of non-exempt into exempt property is "fraudulent". Most of the cases require some extrinsic proof of fraud

---

**2.** Minn.Stat. § 510.01 states:

> The house owned and occupied by a debtor as his dwelling place, together with the land upon which it is situated to the amount hereinafter limited and defined, shall constitute the homestead of such debtor and his family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing, except such as are incurred for work or materials furnished in the construction, repair, or improvement of such homestead, or for services performed by laborers or servants.

beyond the mere act of conversion itself. *In re Reed, supra; In re Blum,* 41 B.R. 816 (Bktcy.S.D.Fla.1984); *In re Mehrer,* 2 B.R. 309 (Bktcy.Wash.1980). A transfer of nonexempt to exempt property is not fraudulent *per se. In re Schwingle, supra; Forsberg v. Security State Bank,* 15 F.2d 499 (8th Cir. 1926); *In re Dudley,* 72 F.Supp. 943 (S.D.Cal.1947).

This case, since it is not a discharge proceeding, must necessarily revolve around only what the Minnesota exemption law requires in order to have a validly exempt homestead. M.S.A. § 510.01 *et seq.* I specifically make no determination as to whether debtors' actions in this case would allow denial of discharge of their debts.

### III.

First, it is clear that the Bankruptcy Code drafters themselves contemplated the possibility debtors might convert non-exempt to exempt property. As stated in the Legislative History of 11 U.S.C. § 522, in House Report No. 95–595, 95th Cong., 1st Sess. 360–1 (1977), U.S. Code Cong. & Admin. News 1978, p. 5787:

As under current law, the debtor will be permitted to convert non-exempted property into exempt property before filing a bankruptcy petition. See Hearings, pt. 3, at 1355–58. The practice is not fraudulent as to creditors and permits the debtor to make full use of the exemptions to which he is entitled under the law.

■ Second, I find that the Minnesota homestead exemption statute and case law interpreting it *do* allow conversion of non-exempt to exempt assets prior to a bankruptcy filing at least in certain instances.

Minnesota case law contains no decisions of which I am aware clearly on point. The Minnesota case law which exists discusses issues which are similar only.

■ It is clear that in Minnesota one can move into a non-exempt property previously owned and make it *one's* homestead specifically to protect it from creditors. This is allowed even where the property is mainly a business property and is very valuable.

*O'Brien v. Johnson,* 275 Minn. 305, 148 N.W.2d 357 (1967); *Jacoby v. Parkland Distilling Company,* 41 Minn. 227, 43 N.W. 52 (1889). As stated in *Jacoby, supra:*

A debtor, in securing a homestead for himself and his family by purchasing a house with non-exempt assets, or by moving into a house which he owns, takes nothing from his creditors which the law secures to them, or in which they have any vested right. At 41 Minn. 229–230 [43 N.W. 52].

Other Minnesota cases deal with transfers of non-exempt property to exempt property which are not mere transfers of living quarters as in *O'Brien* and *Jacoby, supra.* In the other cases, the debtors actually converted (or attempted to convert) non-exempt property into exempt property by shifting title or transferring assets. *Nash v. Bengston,* 179 Minn. 7, 228 N.W. 177 (1929) (transfer of property by son to mother to son while son insolvent held fraudulent and property therefore not exempt); *Small v. Anderson,* 139 Minn. 292, 166 N.W. 340 (1918) (transfer by husband debtor of all property to his wife and wife's subsequent transfer of homestead property formerly in her name alone to husband's name held fraudulent since no consideration); *Kangas v. Robie,* 264 F. 92 (8th Cir. 1920) (transfer by debtor of business receipts into purchase of new homestead required homestead exemption to be denied).

In all of these cases fraud was found to exist as to creditors. Either there was not fair consideration given or business assets were used, or actual fraud was shown.

■ Under present Minnesota law, in order to deny a homestead exemption where a conversion occurs, it appears that a Court must find what amounts to a fraudulent conveyance under Minn.Stat. § 513.20 *et seq.,* although the cases do not specifically say this. Fraudulent conveyances include:

1) conveyances made by a person "who is or will be thereby rendered insolvent ... without regard to his actual

intent" if the conveyance is made without a fair consideration. M.S.A. § 513.23.

2) conveyances made by a person in business or in a business transaction without fair consideration. M.S.A. § 513.24.

3) conveyances made by a person about to incur debts that he cannot pay. M.S.A. § 513.25.

4) conveyances made by a person "with actual intent distinguished from intent presumed in law" to defraud creditors. M.S.A. § 513.26.

Preferential payments made to creditors on antecedent debts are not fraudulent conveyances in and of themselves. *Grager v. Hansen*, 165 Minn. 317, 206 N.W. 440 (1925); *Ferguson v. Kumler*, 11 Minn. 104, Gil. 62 (1886); *Neubauer v. Cloutier*, 265 Minn. 539, 122 N.W.2d 623 (1963). There must be proof of one of the above criteria to void the transfer as to creditors.

## IV.

The main case upon which the trustee is relying as to his position is *Mickelson v. Anderson*, 31 B.R. 635 (Bktcy.Minn.1982). This decision of Judge Owens involves a fact situation very similar to the case here. The facts in *Mickelson* were that two debtors "on the eve of bankruptcy" converted some non-exempt assets into exempt assets by selling the assets and satisfying a real estate mortgage on debtors' homestead. The debtors used $13,600.00 of nonexempt assets including proceeds of a car and truck sale, proceeds of sale of a Port Authority Bond, proceeds of sale of a 50% interest in a corporation and an unimproved lot and $1,000 borrowed from debtor's father. The debtors had been advised by their attorney that conversion of nonexempt assets into exempt assets was permissible and that nonconverted assets would go to unsecured creditors. The debtors testified that they converted his assets to take full advantage of the exemptions allowed in bankruptcy. They also testified that they did not finally decide to file bankruptcy until after they had paid off their mortgage.

I find that I cannot agree with Judge Owen's decision in the *Mickelson* case that such conduct is fraudulent under Minnesota law warranting a denial of exemption for the converted assets without more extrinsic proof of fraud than the record in that case reveals. There was fair consideration paid; these were not business assets; there was no "actual fraud" as I read the opinion.

The *McGlynn* case, unreported decision of February 8, 1979 in Minnesota Bankruptcy File Nos. 4–74–BKY 925(O), 4–74–BKY 926(0) and 4–75–BKY 88(0), was also a decision of Judge Owens which resulted in denial of a homestead exemption to debtors. I find that case to be different than the *Mickelson* case and consistent with the earlier Minnesota and Eighth Circuit decisions. The case facts clearly evidenced an intent to defraud by the debtors, utilizing business assets, family transfers, borrowed monies, etc. The activities of debtors would clearly fit under the fraudulent conveyance criteria of Minn.Stat. 513.23–.26.

I find that all of the cases cited in *McGlynn* either found no fraud in conversion to exempt assets, *O'Brien, supra, Jacoby, supra, Stricker v. Trullinger*, 172 Minn. 547, 216 N.W. 231 (1927), or found one of the types of fraudulent conveyance established in Minn.Stat. § 513.20 *et seq*, such as the *Small v. Anderson* case, *supra*, (no fair consideration), *Nash v. Bengston* case, *supra*, (no fair consideration), *Esty v. Cummings*, 75 Minn. 549, 78 N.W. 242 (1899), (actual fraud), *Kangas v. Robie, supra*, (business assets used).

 This case at hand involves debtors who held savings for more than 7–1/2 years which they used to satisfy their mortgages prior to bankruptcy. There was fair consideration; no business assets were used; no debts were incurred that could not be paid as part of the transaction; no actual fraud was proven. The trustee has the burden of proving fraud and I find none.

In short, the debtors clearly paid fair consideration on an antecedent debt which, although perhaps preferential, under present case law is *not* fraudulent for purposes of allowing an exemption.

IT IS HEREBY ORDERED that:

1. Debtors' motion for an order approving their claimed homestead exemption is granted.

2. All other motions of all parties are denied.