**In re Waverly Floyd COATES, Wynona Evelyn Coates, Debtors.**

**Bankruptcy No. 99–51062–7.**

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Jan. 6, 2000.

---

15.  226 B.R. 567, 571 (E.D.Tex.1998).

16.  226 B.R. at 574.

Floyd Holder, Lubbock, TX, for debtors.

Max Tarbox, Lubbock, TX, Chapter 7 Trustee.

## MEMORANDUM OF OPINION ON OBJECTION TO EXEMPTIONS

JOHN C. AKARD, Bankruptcy Judge.

The Trustee–in–Bankruptcy objects to the Debtors' claim of exemption in two vehicles and their home because on the eve of bankruptcy they disposed of nonexempt

property and used the proceeds to pay off the liens on those items. The court finds that the exemption for the homestead must be allowed and that the Trustee has a lien on the vehicles to the extent of the nonexempt funds used to pay off the liens on them.[1]

## FACTS

For a number of years Waverly Floyd Coates operated a farm supply business in Farwell, Texas, which is located on the Texas/New Mexico border. He sold the business to a third party who paid for the inventory and purchased the land and building on a long term basis. That party defaulted and Mr. Coates repossessed the land and building. Subsequently, his son began a farm supply business at that location.

In the spring of 1998, Mr. Coates and his wife, Wynona Evelyn Coates, cosigned a note for her son for a sprinkler system on her son's farm. Diversified Financial Services, Inc. (Diversified) financed the system. The son did not receive anticipated financing for his farm crop and the sprinkler system was repossessed in the summer of 1998.

Mr. Coates testified that in the fall of 1998, he decided to sell some property to pay off his debts. He had someone interested in purchasing the Farwell building, but the purchaser wanted to buy the inventory of the farm supply store his son operated. The parties were having difficulty agreeing on the inventory and Mr. Coates was anxious to leave to be with his seriously ill brother in California. Mr. Coates testified that to facilitate the sale of

the property, on December 11, 1998 he deeded the property to De'Aun Willoughby, his accountant, who resides in Melrose, New Mexico. At the same time, Mr. Coates transferred a note secured by property in Farwell to Ms. Willoughby. The note, dated June 15, 1995, was in the original principal amount of $100,000. It was executed by Ronald Byrd and wife, LeAndra Byrd. There was no consideration for either the deed or the transfer of the note to Ms. Willoughby. Unfortunately, Mr. Coates' brother died before he could get there.

On April 5, 1999, Diversified secured a judgment against Mr. and Mrs. Coates for $119,951.40. Mr. and Mrs. Coates did not contest that suit.[2] Mr. Coates thought that because the sprinkler had only been used a few times, it could be sold for almost enough to pay off the judgment. Unfortunately, that expectation did not materialize and there is a substantial balance owing to Diversified.

On July 15, 1999, the Muleshoe State Bank (Bank) obtained a judgment against Mr. and Mrs. Coates for $93,428.76.[3] The Bank filed various actions to recover on that judgment which included foreclosure on equipment (which netted $29,500), a suit filed August 31, 1999 to set aside the conveyances to Ms. Willoughby, and scheduled depositions in aid of judgment. The depositions were not held because Mr. and Mrs. Coates filed for bankruptcy. During the time the Bank pursued discovery in connection with its judgment, Mr. and Mrs. Coates, who live in Lubbock, Texas, hired a Lubbock lawyer knowledgeable in bankruptcy matters. In late August or early September 1999, they employed a

---

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(B).

2. The evidence did not reveal when the suit was filed.

3. The evidence did not reveal when that suit was filed nor the basis for it.

Clovis, New Mexico attorney who has not previously appeared in this court.

Mr. Coates sold the note receivable from Mr. and Mrs. Byrd, which at that time had a balance due of approximately $90,000, to Mr. Byrd for $80,000.[4] Mr. Coates stated that the transfer was made with the assistance of the New Mexico attorney. The $80,000 was deposited to Mr. and Mrs. Coates' account at the Plains National Bank of Lubbock on September 2, 1999. Mrs. Coates wrote the following significant checks on that account:

a. Check #437 dated September 3, 1999 to the New Mexico attorney for $3,500;

b. Check #438 dated September 3, 1999 to the New Mexico attorney for $1,000;[5]

c. Check #442 dated September 2, 1999 payable to Plains National Bank for $8,332.47 to pay off the lien on a 1996 Cadillac.

d. Check #446 dated September 2, 1999 to the First State Bank of Lubbock, Texas for $9,066.36 to pay off the lien on a Dodge pickup truck.

e. Check #447 dated September 2, 1999 to Norwest Mortgage, Inc. for $45,115.49 to pay off the lien on their Lubbock home.

f. Check #451 dated September 2, 1999 to the Internal Revenue Service for $4,500.

g. Check #452 dated September 2, 1999 to Ms. Willoughby for $3,500.[6]

On September 20, 1999, Mr. and Mrs. Coates filed for relief under Chapter 7 of the Bankruptcy Code in the captioned case. On September 29, 1999, their New Mexico attorney filed a disclosure stating

that he had received $3,500 attorney's fees in connection with the bankruptcy case. Mr. and Mrs. Coates filed their statement of financial affairs and schedules on October 4, 1999. There were a number of omissions from the Debtors' schedules and statement of financial affairs, including the following:

a. The East half of a quarter section of land in Lynn County, Texas. After prodding by the Trustee, the Debtors filed amended schedules in which they valued this property at $40,000.

b. Paintings which were on consignment for sale at an art dealer which the Debtors valued in the amended schedules at $19,500.

c. A fifth-wheel camper trailer which the Debtors valued in the amended schedules at $12,000. However, they testified at an examination conducted by the Trustee that the trailer had a value of between $18,000 and $20,000.

d. In the statement of financial affairs, the Debtors listed the checks to Plains National Bank, First State Bank of Lubbock, and Norwest Mortgage. They did not list the September payments to the Internal Revenue Service, Ms. Willoughby, or the New Mexico attorney.

e. There was no mention in the statement of financial affairs of the transfer of the $100,000 note to Mr. Byrd for $80,000.

f. The two transfers to Ms. Willoughby on December 11, 1998 were not mentioned.

## ISSUE

The issue is whether Mr. and Mrs. Coates' claim of exemption to the 1996

---

4. The evidence did not give details of that transaction.

5. The checks to the New Mexico attorney indicate that they were for different services,

so it is possible that the $1,000 check was an old bill for prepetition services.

6. This check appears to be payment for prior services.

Cadillac, the 1996 Dodge pickup and their Lubbock homestead should be denied because they paid off the liens on those properties on the eve of bankruptcy using nonexempt funds.

## APPLICABLE LAW

Mr. and Mrs. Coates elected the Texas state exemptions as permitted by § 522(b)(2) of the Bankruptcy Code.[7] Consequently, the court must consider the Texas Constitution and statutes and the cases which construe them. *First Texas Sav. Ass'n v. Reed (In re Reed)*, 700 F.2d 986, 991 (5th Cir.1983). With respect to personal property, the Texas statutes provide:

### § 42.004. Transfer of Nonexempt Property.

(a) If a person uses the property not exempt under this chapter to acquire, obtain an interest in, make improvement to, or pay an indebtedness on personal property which would be exempt under this chapter with the intent to defraud, delay, or hinder an interested person from obtaining that to which the interested person is or may be entitled, the property, interest, or improvement acquired is not exempt from seizure for the satisfaction of liabilities. If the property, interest, or improvement is acquired by discharging an encumbrance held by a third person, a person defrauded, delayed, or hindered is subrogated to the rights of the third person.

Tex.Prop.Code Ann. § 42.004(a) (Vernon Supp.2000).

## DISCUSSION

The legislative history to the Bankruptcy Code indicates that the Debtors should be freely able to transfer nonexempt property to exempt property on the eve of bankruptcy.

As under current law, the debtor will be permitted to convert non-exempt property into exempt property before filing a bankruptcy petition.... The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.

H.R.Rep. No. 595, at 361 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 at 6317. However, no provision of the Bankruptcy Code addresses this subject. Despite the broad language of the legislative history, case law takes a more restrictive approach in dealing with objections to the discharge and when state law denies exemptions because of the debtor's fraudulent conduct. *First Texas Sav. Ass'n v. Reed (In re Reed)*, 11 B.R. 683, 687 (Bankr.N.D.Tex. 1981), *aff'd*, 700 F.2d 986 (5th Cir.1983).

### Personal Property

■ This court's predecessor, the Honorable Bill H. Brister, was the trial judge in *Reed.* He explains that the above-quoted provision of the Bankruptcy Code legislative history has no application to state exemptions where state law denies or restricts the exemption. 11 B.R. at 687.[8] Texas law restricts personal property exemptions where a debtor, with the intent to defraud, delay or hinder creditors, uses nonexempt property to acquire or discharge liens on exempt property. Tex. Prop.Code Ann. § 42.004(a) (Vernon Supp. 2000). Under the Texas Property Code, debtors are able to claim as exempt one motor vehicle for each licensed driver in the family (subject to the total dollar limitation on the value of exempt property contained in Tex.Prop.Code Ann. § 42.001 (Vernon Supp.2000)). Both Mr. and Mrs.

---

7. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

8. *See also In re Kravitz,* 225 B.R. 515, 518–19 (Bankr.D.Mass.1998).

Coates are licensed drivers. Thus, the Cadillac and pickup are both eligible personal property for exemption under the Texas statutes. In their schedules, Mr. and Mrs. Coates stated that the Cadillac had a value of $25,000. The amount of the lien paid off was $8,332.47. They valued the pickup at $20,000. The amount of the lien paid off was $9,066.36.

■ Did Mr. and Mrs. Coates make the payments on the vehicles with the intent to defraud, delay or hinder their creditors? Mr. Coates asserted that the New Mexico attorney suggested he should sell the note and use the money to pay off liens on exempt property. He claimed that Ms. Willoughby suggested that they omit the paintings from their bankruptcy schedules. These statements are not supported by corroborative evidence and the court does not find them credible. Although Mr. Coates only had formal education through the ninth grade, he operated an agricultural supply business. He is articulate and understands what he is doing. When financial difficulties loomed, he transferred a note and land to Ms. Willoughby. When he returned from California following his brother's death, he did not have Ms. Willoughby retransfer them to his name. When their creditors began closing in, Mr. and Mrs. Coates switched from a knowledgeable bankruptcy attorney in Lubbock to a New Mexico attorney whose performance in this case indicates that he had little, if any, experience in bankruptcy cases.[9]

■ Based on the totality of the circumstances, the court finds that Mr. and Mrs. Coates sold the note and used the proceeds to pay the liens on exempt vehicles with an intent to hinder and defraud their creditors. The Texas statute provides that if an interest in property is acquired by discharging an encumbrance held by a third person, a person defrauded is subrogated to the rights of that third person. TEX.PROP.CODE ANN. § 42.004(a) (Vernon Supp.2000). A Trustee–in–Bankruptcy represents all of the creditors and has the rights of the defrauded creditor. §§ 544 and 548(a). Consequently, the Trustee will be granted a lien on both vehicles.

## HOMESTEAD

■ The Trustee asks this court to deny Mr. and Mrs. Coats' claim of homestead exemption because of their fraud on the creditors, following In re Curry, 160 B.R. 813 (Bankr.D.Minn.1993) and In re Kravitz, 225 B.R. 515 (Bankr.D.Mass.1998). Both courts observed that since the debtors claimed exemptions under state law, state law determines their right to an exemption. Curry at 817; Kravitz at 519. In Curry, the court said: "Under Minnesota law, in order to deny a homestead exemption based upon fraud, the court must find what amounts to a fraudulent conveyance." Curry at 817 (citations omitted). Using the Minnesota version of the Uniform Fraudulent Transfer Act, the court found such fraud and denied the homestead exemption. The Kravitz court used Florida law to determine that state law would deny the homestead exemption based on the fraud in the case.

Texas statutes do not contain a provision with respect to the homestead similar to the provisions concerning personal property contained in TEX.PROP.CODE ANN. § 42.004(a) (Vernon Supp.2000). Texas courts have a long history of allowing the use of nonexempt assets to acquire a homestead. In 1898, a Texas appellate court stated:

The fact that one in failing circumstances, or practically insolvent, disposes of all of his available assets in exchange for a homestead, is not, in law, consid-

---

9. The New Mexico attorney withdrew from this case and the Coates' are now represented by a knowledgeable, experienced bankruptcy attorney.

ered a fraud upon creditors ... as the insolvent debtor has the right to devote what property he may own and possess to the acquisition of a homestead.

*Bell v. Beazley,* 18 Tex.Civ.App. 639, 45 S.W. 401, 403 (no writ).

In *Finn v. Krut,* 13 Tex.Civ.App. 36, 34 S.W. 1013, a case in which the Supreme Court refused a writ of error it was held: "A disposition of property subject to execution for the purpose of procuring a homestead would not be deemed a fraud upon creditors. The head of a family has the right to invest his property in a homestead, and creditors without lien cannot complain that in doing so he uses property that could be levied on for debt, even though he is in failing circumstances."

. . . .

This being so, the manner in which he came to adopt that course, or by whom it was suggested or persuaded, or that its effect was to defeat other such creditors, or that its purpose was to defeat the other creditors are matters wholly immaterial.

*Thompson v. International & G.N.R. Co.,* 45 Tex.Civ.App. 285, 100 S.W. 197, 198 (no writ).

■ Texas courts distinguish between a debtor who converts available non-exempt assets into a homestead and one who uses the fruits of a fraud to acquire a homestead. In the latter case, the defrauded party can set aside the homestead claim.

It has long been decided that homestead and exemption laws of this State were never intended to be, and cannot be, the haven of wrongfully obtained money or properties.... [F]unds wrongfully diverted from a corporation and subsequently diverted into property ordinarily exempt, will be subject to a constructive trust.

*Baucum v. Texam Oil Corp.,* 423 S.W.2d 434 (Tex.Civ.App.—El Paso 1967, writ ref'd n.r.e.). *See also Pace v. McEwen,* 617 S.W.2d 816 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ) (Pace acquired the property with funds he fraudulently obtained from Mrs. Spence. Thus he could not claim the property as homestead.). In the instant case, Mr. and Mrs. Coates did not use the fruits of a fraud to pay off the lien on their homestead.

The issue presently before this court was decided by Judge Brister in *Driskill v. Reed (In re Reed),* 12 B.R. 41 (Bankr. N.D.Tex.1981). During the two weeks prior to filing bankruptcy, Mr. Reed sold several nonexempt assets for approximately 50% of their value and used the proceeds to pay down liens on his homestead. The Trustee–in–Bankruptcy challenged Mr. Reed's claim of the property as exempt homestead. Judge Brister found that art. XVI, § 50 of the Texas Constitution prescribed the only permissible reasons for a forced sale of the homestead and allowed the exemption.[10] However, Judge Brister denied Mr. Reed's discharge for that and other actions done with the intent to hinder, delay, or defraud the creditors. *Reed,* 11 B.R. at 689. The denial of the discharge was upheld by the Fifth Circuit. In its opinion the Fifth Circuit pointed out that it did not have to decide the exemption question since that matter was not appealed, but it commented on the matter and gave the impression that it agreed with Judge Brister's conclusion. *Reed,* 700 F.2d at 990–91.

## CONCLUSION

For the reasons stated, Mr. and Mrs. Coats' homestead exemption claim will be allowed. The Trustee will be given a lien on the two vehicles upon the same terms as the liens which Mr. & Mrs. Coats paid off. They will be instructed to surrender

10. This conclusion is mentioned in Judge Brister's other *Reed* opinion. 11 B.R. at 687.

the original title certificates to the Trustee and to cooperate with the Trustee in registering his lien on the vehicles.

The Trustee is to prepare a judgment in conformance with this opinion. The judgment shall include the terms of repayment of the liens on each vehicle. The Trustee is to submit the judgment to opposing counsel for approval as to form. If the parties cannot agree upon a judgment within 15 days, each party is to submit a proposed judgment.[11]

---

11. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED.R.BANKR.P. 7052 which is made applicable to Contested Matters by FED.R.BANKR.P. 9014. This Memorandum will be published.